UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JANE DOE                                    CIVIL ACTION

VERSUS                                      NO: 17-8948

ORTHO-LA HOLDINGS, LLC, ET AL.              SECTION: "H"

## ORDER AND REASONS

Before the Court are cross Motions for Summary Judgment filed by Defendant Orthopaedic Sports Specialists of Louisiana, LLC (Doc. 45) and Plaintiff Jane Doe (Doc. 52). Also before the Court are Plaintiff's Motion to Exclude the expert reports and testimony of Lee Cortez, Dr. Patrick Ellender, Dr. Jason Higgins, Dr. John Hildenbrand, and Dr. James Dunning (Doc. 30) and Plaintiff's additional Motions to Exclude the expert reports and testimony of Drs. James Dunning (Doc. 54) and Patrick Ellender (Doc. 55). Defendant also filed a Motion to Exclude the expert report, written declaration, and testimony of Dr. Toby Fugate (Doc. 37). For the following reasons, the cross motions for summary judgment are **DENIED**, Plaintiff's Motions to Exclude are **GRANTED** in part, and Defendant's Motion to Exclude is **GRANTED** in part.

1

## BACKGROUND

This suit arose after a physical therapist working for Defendant Orthopeadic Sports Specialists of Louisiana, LLC,[1] refused to perform dry needling therapy[2] on Plaintiff Jane Doe, an individual with HIV. The parties generally do not dispute the facts underlying this action. Plaintiff's path to Defendant's clinic began after she injured her knee at work.[3] Later on, Dr. Patrick Ellender performed two surgeries on Plaintiff's knee. Thereafter, Dr. Ellender prescribed Plaintiff physical therapy as part of her post-operative regimen. Plaintiff received that physical therapy from Physical Therapist Lee Cortez, an employee of Defendant. After beginning her course of physical therapy, Plaintiff saw Dr. Todd Cowen about Plaintiff's trochanteric bursitis, which is inflammation in the hip joint. Cowen prescribed dry needling therapy in addition to the other physical therapy that Plaintiff already was receiving.

Plaintiff had her first dry needling appointment on October 17, 2016. At that appointment, Plaintiff completed Defendant's "Dry Needling Consent & Information Form" and answered "yes" to the question, "Do you have hepatitis B, hepatitis C, HIV, or any other infectious disease?"[4] Cortez performed dry needling therapy on Plaintiff that day. But Cortez did not learn about Plaintiff's HIV status until her next appointment on October 20, 2016. During that appointment, Cortez told Plaintiff he would not perform dry needling therapy on her because of her HIV status. Nevertheless, Cortez treated Plaintiff with

---

[1] Defendant originally was incorrectly named as d/b/a Ortho-LA.
[2] "Dry needling is a form of therapy in which fine needles are inserted into myofascial trigger points (painful knots in muscles), tendons, ligaments, or near nerves in order to stimulate a healing response in painful musculoskeletal conditions." Doc. 52-13.
[3] *See* Doc. 1 at 2.
[4] Doc. 52-13.

other physical therapy techniques nine other times after October 20. Cortez last treated Plaintiff on November 29, 2016.

Plaintiff filed this suit on September 12, 2017, claiming that Defendant discriminated against Plaintiff because of her HIV-positive status in violation of Title III of the ADA, which prohibits discrimination by places of public accommodation, and section 504 of the Rehabilitation Act, which prohibits discrimination by programs receiving federal funding.[5] Plaintiff and Defendant both move for summary judgment on Plaintiff's claims and oppose the other party's motion. Plaintiff and Defendant also each seek to exclude various expert reports and testimony. The Court will consider the motions jointly.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[8] "If the moving party meets the initial

---

[5] Doc. 1.
[6] FED. R. CIV. P. 56.
[7] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[8] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).

3

burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[9] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[10] "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[11] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[12] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[13]

## II. Expert Reports Under Rule 26(a)(2)

Rule 26 requires experts to make certain pre-trial disclosures.[14] Experts "retained or specially employed to provide expert testimony in the case," also known as retained experts, must provide a written report that meets certain criteria.[15] Even non-retained experts, although not required to produce a written report, must provide to the other parties a disclosure generally containing information on which the expert will testify.[16] A district court may exclude opinions not properly disclosed in accordance with Rule 26 "unless the

---

[9] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[10] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[11] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[12] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[13] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[14] FED. R. CIV. P. 26(a)(2)(B)-(C).
[15] FED. R. CIV. P. 26(a)(2)(B).
[16] FED. R. CIV. P. 26(a)(2)(C).

failure [to disclose] was substantially justified or . . . harmless."[17]

## LAW AND ANALYSIS

I. **Cross Motions for Summary Judgment**

Because the parties each argue summary judgment is appropriate in their favor on the claims made by Plaintiff, this Court will address each claim individually.

    a. **Plaintiff's Claim Under Title III of the ADA**

Title III of the ADA provides, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[18] A plaintiff need not prove that a defendant had any intent to discriminate.[19] To make a claim under Title III, therefore, Plaintiff must prove: (1) she has a disability; (2) Defendant owned, leased, or operated a place of public accommodation; and (3) Defendant denied Plaintiff full and equal enjoyment on the basis of her disability.[20] It is undisputed that Plaintiff has a disability for the purposes of the ADA and that Defendant is a place of public accommodation, satisfying the first two elements

---

[17] FED. R. CIV. P. 37(c)(1); *see* Sobrino-Barrera v. Anderson Shipping Co., 495 F. App'x 430, 433 (5th Cir. 2012).
[18] 42 U.S.C. § 12182(a).
[19] *See* 42 U.S.C. § 12182(b)(2)(A)(i)–(ii). *See also* United States v. Morvant, 898 F. Supp. 1157, 1166 (E.D. La. 1995) (holding that Title III does not require intent based on its prohibition of the use of "standards or criteria . . . that have the effect of discriminating" in 42 U.S.C. § 12182(b)(1)(D)(i)); Emery v. Caravan of Dreams, Inc., 879 F. Supp. 640, 643 (N.D. Tex. 1995) (same).
[20] *See* 42 U.S.C. § 12182(a); *Morvant*, 898 F. Supp. at 1161.

of the Title III claim.[21] The only issue, then, involves whether there exists a dispute of material fact about the third element.

Plaintiff makes a prima facie case under Title III by submitting evidence that Plaintiff was denied dry needling therapy because she was HIV-positive. Specifically, Plaintiff argues that Defendant's conduct was unlawful because Cortez failed to perform an individualized assessment of Plaintiff's fitness for dry needling therapy. Defendant argues that Cortez's decision was not unlawful because he made a medically reasonable determination that dry needling therapy was not appropriate for Plaintiff in light of his training as a physical therapist.

Summary judgment on Plaintiff's Title III claim is inappropriate because questions of material fact abound. The reasonableness of Cortez's determination that Plaintiff was not a candidate for dry needling is a question of fact best reserved for a jury.

### b. Plaintiff's Claim Under Section 504 of the Rehabilitation Act

Section 504 of the Rehabilitation Act provides that, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[22] To make a claim under Section 504, therefore, Plaintiff must prove: "(1) she is disabled; (2) she sought services from a federally funded entity; (3) she was 'otherwise qualified' to receive those services; and (4) she was denied those services 'solely by reason of her . . .

---

[21] *See* Bragdon v. Abbott, 524 U.S. 624, 647 (1998) (holding that being HIV positive is a disability under the ADA); Doc. 45-1 at 12 (noting that defendant acknowledges status as place of public accommodation). *See also* 42 U.S.C. § 12181(7)(F) (identifying "professional office of a health care provides," "hospital[s]," and "other services establishment[s]" as places of public accommodation).

[22] 29 U.S.C. § 794(a).

disability.'"[23] Section 504 does not provide a remedy for medical malpractice but is applicable to the denial of medical care because of a disability.[24]

A person with a disability is "otherwise qualified" for a service if that person "meets the essential eligibility requirements for the receipt of such services."[25] In determining whether a person with a disease is otherwise qualified, a court should consider the reasonable medical judgments of physicians and evaluate whether the provider could have reasonably accommodated the individual.[26] A defendant's reason for denying services should not "encompass[] unjustified consideration of the handicap itself."[27] With regard to whether a plaintiff was denied services solely by reason of her disability, a plaintiff challenging a healthcare provider's refusal to treat must show the provider's decision was "devoid of any reasonable medical support . . . in a way that reveals it to be discriminatory."[28] A provider must at least make its decision as the result of an individualized inquiry.[29]

It is undisputed that Plaintiff has a disability for the purposes of Section 504 and that Defendant is a program that receives federal funding, satisfying the first two elements of a section 504 violation.[30] Regarding the third element,

---

[23] Lesley v. Hee Man Chie, 250 F.3d 47, 53 (1st Cir. 2001).
[24] *See Lesley*, 250 F.3d at 58 ("[A] doctor cannot escape potential liability under the Rehabilitation Act merely by casting his refusal to treat as an exercise of medical judgment. . . ."); *see also* Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) (holding that Section 504 did not apply to plaintiff's claim against a doctor for advising that, although surgery was best, no treatment was an acceptable course of action).
[25] 45 C.F.R. § 84.3(l)(4).
[26] *See* Sch. Bd. of Nassau Cty., Fla. v. Arline, 480 U.S. 273, 288 (1987) (holding that the court should defer to public health officials, but declining to extend that deference to private physicians).
[27] Leckelt v. Bd. of Comm'rs of Hosp. Dist. No. 1, 714 F. Supp. 1377, 1385 (E.D. La. 1989), *aff'd*, 909 F.2d 820 (5th Cir. 1990).
[28] *Lesley*, 250 F.3d at 55 (emphasis removed).
[29] *Lesley*, 250 F.3d at 58.
[30] *See Lesley*, 250 F.3d at 53 (holding that HIV-positive status is a disability under the Rehabilitation Act) (citing *Bragdon*, 524 U.S. at 631); Doc. 45-1 at 13 (noting that

Plaintiff submits evidence that she was "otherwise qualified" to receive dry needling in the form of a declaration from Fugate stating that her risk of infection was comparable to that of a person without HIV.[31] Regarding the fourth element, Plaintiff argues she was denied dry needling "solely" because of her disability by citing to Cortez's deposition as evidence that he did not conduct any individualized inquiry into Plaintiff's medical history to determine her ability to receive dry needling therapy.[32] Plaintiff has therefore submitted evidence of a prima facie case under Section 504 for the denial of dry needling therapy.[33]

Defendant argues that it did not intentionally discriminate against Plaintiff. Rather, Defendant argues it made a reasoned medical decision as evidenced by its continued treatment of Plaintiff with other physical therapy modalities, Cortez's concern for Plaintiff's infection rather than his own, and external support for the idea that HIV is a contraindication for dry needling therapy.

Just as with Plaintiff's Title III claim, summary judgment on Plaintiff's Section 504 claim is inappropriate because there are questions of material fact. The reasonableness of Cortez's determination that Plaintiff was not a candidate for dry needling, the extent to which Cortez made an individualized inquiry, and whether the evidence shows an intent to discriminate are questions of fact reserved for the jury.

## II. Plaintiff's Requests to Exclude Expert Reports and Testimony of Cortez, Ellender, Dunning, Higgins, and Hildenbrand

---

Defendant recognizes its participation in Medicaid makes it a qualifying provider under the Rehabilitation Act).

[31] *See* Doc. 52-10 at 2.
[32] *See* Doc. 52-6.
[33] That Cortez continued to provide other types of physical therapy to Plaintiff is not dispositive of the question of whether the denial of dry needling was discriminatory.

As a threshold matter, Defendant acknowledged during Oral Argument that Higgins and Hildenbrand are no longer necessary as experts. Thus, insofar as Plaintiff seeks to exclude them, the issue is moot. Plaintiff's requests to exclude Cortez, Ellender, and Dunning as experts remain as the only issues before this Court.[34]

Plaintiff argues that the expert reports of Cortez, Ellender, and Dunning failed to meet the requirements provided by the Federal Rules of Civil Procedure for written expert reports of retained experts.[35] Defendant essentially responds that neither Cortez, Ellender, nor Dunning is a retained expert such that their reports need only comply with the less rigorous requirements for non-retained experts.[36] Defendant did not argue that the failure of the experts to comply with the requirements for retained experts was substantially justified or harmless.[37]

As a treating physician of Plaintiff, Ellender need not have filed an expert report necessary for retained experts.[38] In fact, despite Defendant's designation of Ellender as an expert it may call for trial, Defendant's arguments in filings with this Court reveal that Defendant intends to use Ellender as a fact witness. As such, this Court will allow Ellender to testify about matters he learned in the course of *his* treatment of Plaintiff. But because Ellender is not, in fact, a retained expert, he shall not testify about his opinions regarding Cortez's or anyone else's treatment of Plaintiff. Put clearly,

---

[34] *See* Docs. 30, 54, & 55.
[35] *See* Doc. 30-1 at 3. *See also* FED. R. CIV. P. 26(a)(2)(B) (listing the requirement of written reports necessary for retained experts).
[36] *See* FED. R. CIV. P. 26(a)(2)(C) (listing the requirement of written reports necessary for non-retained experts). *See also*
[37] *See* FED. R. CIV. P. 37(c)(1) (allowing district courts to exclude opinions not made in compliance with Rule 26(a) unless the non-compliance is "substantially justified or is harmless").
[38] *See* Hernandez v. Green, No. 14-2168, 2017 WL 78472, at *4 (E.D. La. Jan. 9, 2017) (collecting cases).

9

Ellender's testimony shall not extend to matters beyond the scope of his own treatment of Plaintiff.

The same is true for Cortez. As a health care professional who actually treated Plaintiff, Cortez may testify about anything related to that treatment.[39] Because he is not truly a retained expert for litigation, whether his affidavit complies with the requirements under the Federal Rules for retained experts is irrelevant. Cortez may testify about anything related to his own treatment of Plaintiff, including his reasons for treating her.

Dunning is the doctor of physical therapy who trained Cortez on dry needling. Defendant seems to argue that Dunning is not a retained expert because he was not paid for work he did related to this litigation. But that fact is not dispositive. Unlike Cortez and Ellender, Dunning never actually treated Plaintiff. Further, Dunning had no involvement in this matter until Plaintiff filed her complaint with the Office of Civil Rights. Thus, Dunning falls squarely into the category of retained experts who must provide a written report pursuant to Rule 26(a)(2)(B). Because Dunning, a non-treating medical professional brought into this matter for litigation purposes, failed to follow the disclosure requirements for retained experts, he cannot testify as an expert. As such, he may only testify about facts regarding the dry needling training he gave to Cortez. Dunning shall not, however, offer his opinion about Cortez's treatment of Plaintiff.

Plaintiff's Motion to exclude Dunning's affidavit and letter, then, is granted in part. Because paragraphs 7, 9, 10, 11, and 12 of Dunning's affidavit

---

[39] *See* FED. R. CIV. P. 26(a)(2)(C) advisory committee's notes to 2010 amendment (noting that rule may apply to "other health care professionals" who are not physicians); Anders v. Hercules Offshore Servs., LLC, 311 F.R.D. 161, 162 n.4 (E.D. La. 2015) (recognizing same proposition).

10

express opinions about Cortez's treatment of Plaintiff,[40] the Court will not allow Dunning to testify about those matters. The Court will allow Dunning to testify about any of the other matters mentioned in his affidavit, but only as a fact witness. The same parameters apply to the information contained in the letter Dunning submitted to the Office of Civil Rights as part of the office's investigation into Plaintiff's original complaint filed with the office.[41] Dunning may testify about matters contained in the first paragraph of the letter but not the additional paragraphs, which analyze Cortez's treatment of Plaintiff.

## III. Defendant's Request to Exclude Fugate's Expert Report, Written Declaration, and Testimony

Defendant asks this Court to exclude the expert report,[42] written declaration,[43] and testimony of Doctor Toby Fugate on the grounds this his report does not meet the requirements provided by the Federal Rules for retained experts, that he lacks the qualifications to testify about HIV, that his written declaration was untimely submitted, and that his testimony will not be helpful.[44] Plaintiff responds that Fugate's report does satisfy the requirements for retained experts, that he is an HIV expert qualified in his field, and that his testimony will help the jury understand aspects of the virus crucial to the ultimate question of whether Cortez's decision to refuse dry needling to Plaintiff was medically sound.[45]

Fugate's report meets the requirements necessary for reports by retained experts. It contains a complete statement of Fugate's opinions, the facts used to inform them, Fugate's qualifications and publications, his experience as an

---

[40] *See* Doc. 30-2 at 16–17.
[41] *See* Doc. 36-6.
[42] Doc. 37-4.
[43] Doc. 56-9.
[44] *See* Docs. 37-1, 58.
[45] *See* Doc. 46.

expert witness, and details of his compensation.[46] As an infectious disease physician and researcher who directs an infection control department at a health clinic that treats many HIV patients, Fugate possesses qualifications sufficient to testify as an HIV expert.[47] To the extent Plaintiff wants Fugate to testify about immunosuppression and contraindication issues with HIV patients, this Court finds such testimony would be helpful to the jury. Fugate shall not, however, testify about the standard of care for physical therapists deciding whether dry needling is appropriate for a particular patient. In general, Fugate may testify as an HIV expert—not a dry needling expert. Thus, to the extent Fugate's report opines on the appropriateness of dry needling for HIV patients, particularly the Plaintiff, this Court excludes that portion of the report. Finally, this Court finds that Fugate's written declaration is not materially different from his expert report. As such, Defendant's request to exclude Fugate's written declaration is denied.

## CONCLUSION

For the foregoing reasons, the cross Motions for Summary Judgment are **DENIED**. Plaintiff's Motion to Exclude the expert reports and testimony of Higgins and Hildenbrand is **DENIED AS MOOT**. Plaintiff's Motion to Exclude the expert reports and testimony of Cortez, Ellender, and Dunning are **GRANTED** in part. Defendant's Motion to Exclude the expert report, written declaration, and testimony of Fugate is **GRANTED** in part.

New Orleans, Louisiana this 25th day of September, 2018.

---

[46] Doc. 37-4.
[47] *See* Doc. 37-4.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**